ACCEPTED
03-13-00077-CV
4288823
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/26/2015 4:38:03 AM
JEFFREY D. KYLE
CLERK

No. 03-13-00077-CV

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
AUSTIN, TEXAS

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/26/2015 4:38:03 AM
JEFFREY D. KYLE
Clerk

TEXAS STATE BOARD OF EXAMINERS OF MARRIAGE AND FAMILY
THERAPISTS; CHARLES HORTON IN HIS CAPACITY AS EXECUTIVE
DIRECTOR; SANDRA DESOBE IN HER CAPACITY AS PRESIDING
OFFICER; TEXAS ASSOCIATION FOR MARRIAGE AND FAMILY THERAPY,
*Appellants / Cross-Appellees,*

v.

TEXAS MEDICAL ASSOCIATION,
*Appellee / Cross-Appellant.*

On Appeal from the 53rd Judicial District
Travis County Texas

AMICUS BRIEF OF
THE ASSOCIATION OF MARITAL
AND FAMILY THERAPY REGULATORY BOARDS

STEVEN T. PELUSO
THE LAW OFFICE OF
  STEVEN T. PELUSO, ESQ.

The St. James Building
1133 Broadway, Suite 304
New York, New York 10010
Tel.:  646.448.4319
steven.peluso@spelusolawoffice.com

# TABLE OF CONTENTS

Table of Contents ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ ii

Index of Authorities ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ iv

Statement of Interest ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 1

Statement of Facts ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 3

Summary of the Arguments ⸺⸺⸺⸺⸺⸺⸺⸺ 4

Arguments ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 7

   A. Licensed Marriage and Family Therapists are fully qualified to perform diagnostic assessments as part of their therapeutic role in the therapeutic settings in which they practice. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 7

   B. Licensed Marriage and Family Therapists are specifically trained to perform diagnostic assessments as part of their therapeutic role in the therapeutic settings in which they practice. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 9

   C. Licensed Marriage and Family Therapists are specifically tested on their competency to perform diagnostic assessments as part of their therapeutic role in the therapeutic settings in which they practice. ⸺⸺⸺ 14

   D. Diagnosis standing alone does not meet the statutory definition of practicing medicine under the Texas Medical Practice Act. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 16

   E. There is no lawful mechanism by which a Licensed Marriage and Family Therapist may receive a diagnosis from a physician. ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ 19

F. The Texas legislature has specifically set forth in the Medical Practice Act those instances in which a physician must supervise a non-physician practitioner when performing a medical act. ........................................20

G. The structure of the Occupations Code supports that Marriage and Family Therapy is not the practice of medicine and therefore a diagnostic assessment is not practicing medicine. ........................................22

H. Holding that a diagnostic assessment is practicing medicine violates the intent of the Code Construction Act. ........24

I. Dr. Priscilla Ray the Texas Medical Association's expert should have been disqualified. ........................................25

Conclusion ........................................27

Certificates of Compliance ........................................29

Certificate of Service ........................................30

Appendix A ........................................31

Appendix B ........................................36

Appendix C ........................................38

iii

# INDEX OF AUTHORITIES

**STATUTES**

Title 3 of the Occupations Code ............................................................. 23

TEX. OCC. CODE § 1.001 ........................................................................ 22

TEX. OCC. CODE § 1.001(b) .................................................................... 22

TEX. OCC. CODE § 151.2(a)(13) ......................................................... 16, 17

TEX. OCC. CODE § 157.001 et. seq. .................................................... 20,21

TEX. OCC. CODE § 502.002(4) ................................................................ 18

TEX. GOV. CODE § 311.021 ..................................................................... 24

TEX. GOV. CODE § 311.021(5) .................................................................. 25

**RULES**

22 TEX. ADMIN CODE §801.2 .................................................................. 12

22 TEX. ADMIN CODE §801.42 ............................................................... 8, 9

22 TEX. ADMIN CODE §801.42(13) .................... 3, 4, 5, 6, 7, 8, 9, 25, 27

22 TEX. ADMIN CODE §801.112 ............................................................ 11,12

22 TEX. ADMIN CODE §801.113 ............................................................... 11

22 TEX. ADMIN CODE §801.114 ............................................................... 13

STATEMENT OF INTEREST

The Association of Marital and Family Therapy Regulatory Boards (the "AMFTRB") is a nonprofit organization whose members are statutorily constituted regulatory boards, including administrative agencies, legally responsible for the regulation of Marital and Family Therapists.[1] It is organized to: facilitate communication among its member boards concerning the regulation of Marital and Family Therapists; to sponsor collaboration among the member boards in developing compatible standards and Family Therapy services to other Marital and Family Therapy organizations, to legislative, judicial, regulatory, and executive governmental bodies, and to other groups or associations whose areas of interest may coincide with those of its membership; to aid its member boards in fulfilling statutory, professional, public, and ethical obligations; and to engage in and encourage research on matters related to the legal regulation of Marital and Family Therapists. AMFTRB's membership includes

---

[1] In Texas the term Licensed Marriage and Family Therapist is used to describe a licensed practitioner. When relating specifically to practitioners in the state of Texas, the Texas convention will be used.

the regulatory agencies of all fifty-(50) states, the District of Columbia, and the Territory of Guam. The Texas State Board of Examiners of Marriage and Family Therapists (the "Texas MFT Board") is a member in good standing of the AMFTRB

The AMFTRB develops, sponsors, and administers National Marital and Family Therapy Examination (the "MFT Examination"). Currently, fifty-one (51) AMFTRB member jurisdictions use the MFT Examination as part of the licensure process for Marital and Family Therapists. The Texas MFT Board utilizes the MFT Examination to test candidates for licensure as Licensed Marriage and Family Therapists in the State of Texas.

Given the above set forth, AMFTRB respectively submits that it is an interested party to this litigation, and furthermore, requests that the Court consider this Amicus Brief in its deliberations. Attached as Appendix A, and incorporated herein, is the affidavit of the Executive Director of the AMFTRB Lois Paff Bergen, Ph.D. that was executed in support of this Amicus Brief.

TO THE HONORABLE THIRD COURT OF APPEALS

Amicus, the Association of Marital and Family Therapy Regulatory Boards, respectfully urges that the Court grant the Appellants' motion for en banc reconsideration and reverse the panel's upholding of the District Court's finding that 22 TEX. ADMIN CODE §801.42(13) is invalid and void. AMFTRB respectfully submits that not to do so frustrates the Texas legislature's intent in enacting the Licensed Marriage and Family Therapist Act, deprives the people of Texas the services of Licensed Marriage and Family Therapists, and violates the Texas Code Construction Act in that the ruling favors a private interest over that of the public.

## STATEMENT OF FACTS

The Texas Medical Association (the "TMA") filed suit challenging *inter alia* a rule promulgated by the Texas MFT Board that permits Licensed Marriage and Family Therapists to perform diagnostic assessments. 22 TEX. ADMIN. CODE § 801.42(13). The TMA claimed, and the District Court and a three (3) judge panel of this Court agreed, that performing a diagnostic assessment as set

3

forth in the rule, or any diagnosis for that matter, falls within the definition of "practicing medicine" as set forth in the Texas Medical Practice Act. As Licensed Marriage and Family Therapists are not licensed as physicians in the state, it was therefore reasoned that performing a diagnostic assessment or a diagnosis is the unlicensed practice of medicine. As such 22 TEX. ADMIN. CODE § 801.42(13) was declared to be invalid and void.

## SUMMARY OF THE ARGUMENTS

The TMA has managed to have the language of the Texas Licensed Marriage and Family Therapist Act contorted in such a way as to ensure that Licensed Marriage and Family Therapists in the State of Texas are effectively prohibited from professional practice. In an exercise of semantic gymnastics, the TMA has effectively had the marriage and family therapy profession gutted in the state of Texas.

On its face, this case would appear to be about the rule making authority of the MFT Board, and the statutory limits of that authority. It is not. This case is about market protectionism, and the medical profession's effort to prevent another profession

4

from rendering professional services. If a Licensed Marriage and Family Therapist cannot provide a diagnostic assessment, she cannot bill an insurance company for her services. If a Licensed Marriage and Family Therapist cannot bill an insurance company for her services, she cannot afford to practice. As a result, if Licensed Marriage and Family Therapists cannot perform diagnostic assessments as set forth in 22 TEX. ADMIN. CODE § 801.42(13), then the people of the State of Texas will be denied access to the mental health services of Licensed Marriage and Family Therapists; mental health services to which the Texas legislature decided they were entitled when it enacted the Texas Licensed Marriage and Family Therapist Act.

The AMFTRB has reviewed the Appellants' motion for en banc reconsideration and finds it to be compelling. Furthermore, the AMFTRB feels that the arguments set forth in the motion are such that the Appellants' motion for en banc reconsideration of the panel's decision should be granted by the Court and the panel's decision upholding of the District Court's finding that 22 TEX. ADMIN CODE §801.42(13) as invalid and void should be reversed.

Therefore, the AMFTB hereby adopts the arguments set forth by the Appellants' in the motion.

The AMFTRB would like to bring to the Court's attention arguments in addition to those that are set forth in the Appellants' motion. The AMFTRB feels that these arguments lend additional support to the Appellants' motion for en banc reconsideration by the Court and that the panel's decision upholding of the District Court's finding that 22 TEX. ADMIN CODE §801.42(13) as invalid and void should be reversed. The arguments are summarized as follows:

A. Licensed Marriage and Family Therapists are fully qualified to perform diagnostic assessments as part of their therapeutic role in the therapeutic settings in which they practice.

B. Licensed Marriage and Family Therapists are specifically trained to perform diagnostic assessments as part of their therapeutic role in the therapeutic settings in which they practice.

C. Licensed Marriage and Family Therapists are specifically tested on their competency to perform diagnostic assessments as part of their therapeutic role in the therapeutic settings in which they practice.

D. Diagnosis standing alone does not meet the statutory definition of practicing medicine under the Texas Medical Practice Act.

6

E. There is no lawful mechanism by which a Licensed Marriage and Family Therapist may receive a diagnosis from a physician.

F. The Texas legislature has specifically set forth in the Medical Practice Act those instances in which a physician must supervise a non-physician practitioner when performing a medical act.

G. The structure of the Occupations Code supports that Marriage and Family Therapy is not the practice of medicine and therefore a diagnostic assessment is not practicing medicine.

H. Holding that a diagnostic assessment is practicing medicine violates the intent of the Code Construction Act.

I. Dr. Priscilla Ray the Texas Medical Association's expert should have been disqualified.

## ARGUMENTS

**A. Licensed Marriage and Family Therapists are fully qualified to perform diagnostic assessments as part of their therapeutic role in the therapeutic settings in which they practice.**

The Texas Medical Association selectively cites section 22 TEX. ADMIN. CODE § 801.42(13) of the Texas Administrative Code and surmises that the Texas MFT Board is authorizing Licensed Marriage and Family Therapists to diagnosis any and all of the mental disorders set forth in the nine hundred plus (900+) pages

7

of the *Diagnostic and Statistical Manual of Mental Disorders*

(DSM). Furthermore, based upon this ridiculously expansive

reading of § 801.42(13), and given the context in which it appears,

the TMA asserts that the Texas MFT Board is explicitly

sanctioning Licensed Marriage and Family Therapists to practice

outside their area of expertise and beyond their level of training,

to include the practice of medicine. This is not the case.

22 TEX. ADMIN. CODE § 801.42(13) reads as follows:

> The following are professional therapeutic services which
> may be provided by a Licensed Marriage and Family
> Therapist or a Licensed Marriage and Family Therapist
> Associate.
> …
>
> (13) Diagnostic assessment which utilizes the knowledge
> organized in the Diagnostic and Statistical Manual of
> Mental Disorders (DSM) as well as the International
> Classification of Diseases (ICD) as part of their therapeutic
> role to help individuals identify their emotional, mental, and
> behavioral problems when necessary.

22 TEX. ADMIN. CODE § 801.42(13)

Citing the above section selectively, however, the TMA

removes it from the larger context in which it appears. 22 TEX.

ADMIN. CODE § 801.42 contains a total of twenty-two (22) sections,

twenty (20) of which specify in great detail the professional

8

therapeutic services that may be provided by a Licensed Marriage and Family Therapist. Far from granting carte blanche for a Licensed Marriage and Family Therapist to practice in any therapeutic setting, 22 TEX. ADMIN. CODE § 801.42 acts as a limitation on the scope of practice.

As such, the logical reading of 22 TEX. ADMIN. CODE § 801.42(13) is that it confines Licensed Marriage and Family Therapists to conducting diagnostic assessments related to those professional therapeutic services specifically set forth in its twenty (20) other sections. Licensed Marriage and Family Therapists are specially trained in and specifically tested on conducting diagnostic assessments related to those professional therapeutic services.

**B. Licensed Marriage and Family Therapists are specifically trained to perform diagnostic assessments as part of their therapeutic role in the therapeutic settings in which they practice.**

Under the AMFTRB's Test Policy, only individuals who have successfully completed a master or doctorate degree in marital and family therapy (or its equivalent as established by the jurisdiction) from a university program that has been accredited

9

by a nationally or regionally recognized accreditation body, and who have undertaken and/or completed post degree supervised practical experience as outlined by the jurisdiction in which the candidate is seeking licensure, may be approved by the jurisdiction to sit for the MFT Examination. As set forth in Dr. Paff Bergen's affidavit, to the best of AMFTRB's knowledge, in order for a program to be accredited by a nationally or regionally recognized accreditation body its curriculum includes assessment and diagnosis of patients in the marital and family therapy practice setting.

For example, the Commission on Accreditation for Marriage and Family Therapy (COAMFTE) accredits master's degree, doctoral degree, and post-graduate degree clinical training programs in marriage and family therapy throughout the United States and Canada. COAMFTE is the accrediting arm of the American Association for Marriage and Family Therapy (AAMFT) and is recognized by the Council for Higher Education Accreditation. In order to meet COAFMTE's Accreditation

Standards, a program's curriculum must include coursework in systemic/relational assessment and mental health diagnosis.

The Texas MFT Board has adopted by rule the accreditation scheme described above. 22 TEX. ADMIN. CODE § 801.113 reads in relevant part as follows:

> (b) Persons applying for licensure as a marriage and family therapist or a marriage and family therapist associate must have a master's or doctorate degree in marriage and family therapy or a master's or doctorate degree in a related mental health field with course work and training determined by the board to be substantially equivalent to a graduate degree in marriage and family therapy from a regionally accredited institution of higher education or an institution of higher education approved by the board.
>
> (c) A degree or course work in a master's or doctorate in marriage and family therapy or a related mental health field must include at least 45 semester hours which the applicant completed at a regionally accredited school, except that those applicants starting August 1, 2017, must have 60 semester hours.

22 TEX. ADMIN. CODE § 801.113.

The Texas MFT Board defines the accreditation bodies that meet the accreditation requirement in two (2) places. First, in 22 TEX. ADMIN. CODE § 801.112, which recognizes COAFMTE accreditation and reads in relevant part:

> (a) The board shall accept the following as meeting academic

11

requirements for licensure as a marriage and family therapist associate:

>   (1) a master's degree or doctorate degree in marriage and family therapy from a program accredited by the Commission on Accreditation for Marriage and Family Therapy Education (COAMFTE);

>   (2) a master's degree or doctorate degree in marriage and family therapy from an accredited institution or program as defined in §801.2 of this title (relating to Definitions), but the program is not accredited by COAMFTE, provided that the practicum is at least 9 credit hours or 12 months.

22 TEX. ADMIN. CODE § 801.112

The Texas MFT Board will also accept non-COAFMTE accreditation, provided, that, the accreditation body is recognized by the Council for Higher Education Accreditation (CHEA). As set forth in the relevant part of 22 TEX. ADMIN. CODE § 801.2:

>   The following words and terms when used in this chapter, shall have the following meanings unless the context indicates otherwise.

>>   (1) Accredited institutions or programs--An institution or program which holds accreditation or candidacy status from an accreditation organization recognized by the Council for Higher Education Accreditation (CHEA).

22 TEX. ADMIN. CODE § 801.2

In addition, an applicant for licensure must have taken a prescribed number of course hours in the area of assessment as set forth in 22 TEX. ADMIN. CODE § 801.114, which reads in relevant part:

> An applicant who holds a graduate degree in a mental health-related field must have course work in each of the following areas (one course is equal to three semester hours):
>
> > (2) assessment and treatment in marriage and family therapy--four courses;

22 TEX. ADMIN. CODE § 801.114

As the Texas MFT Board utilizes the MFT Examination, and therefore must bide by the AMFTRB's Test Policy, all Texas applicants for licensure as a Licensed Marriage and Family Therapist must graduate from an accredited institution. As set forth in the Texas Administrative Code, the Texas MFT Board has adopted rules consistent with this requirement. As such, licensure applicants would have had to demonstrate mastery of assessment and diagnosis of patients in a marital and family therapy practice setting during their education. Therefore, before they can even sit for the MFT Examination, every applicant for licensure as a Licensed Marriage and Family Therapist in the

13

state of Texas will have received training in and demonstrated mastery of, in the educational setting, diagnostic assessment and diagnosis in the therapeutic settings in which they will practice. In short, Licensed Marriage and Family Therapist in Texas must have demonstrated sufficient training to competently perform diagnostic assessments and diagnoses in the therapeutic settings in which they practice, otherwise they would not be eligible for licensure by the state.

C. **Licensed Marriage and Family Therapists are specifically tested on their competency to perform diagnostic assessments as part of their therapeutic role in the therapeutic settings in which they practice.**

The MFT Examination is an objective competency based national licensure examination that tests candidates on six (6) practice domains. The MFT Examination is based upon a role delineation study. The purpose of the role delineation study is to develop practice-relevant test specifications for the MFT Examination. The role delineation is updated every five (5) to seven (7) years to ensure it remains current. The last such update for the MFT Examination was in 2013.

14

The process works as follows: First, an Examination Advisory Committee (the "EAC") is convened to define the performance domains, tasks, and knowledge required for entry-level practice in marital and family therapy. Members of the EAC are appointed by the AMFTRB and include representatives from various practice settings. The draft of role delineation is then constructed. Next, the draft role delineation undergoes a validation study by a representative sample of licensed Marital and Family Therapists nationwide. Once validated, the task statements are rated for frequency of performance and relation to clinical competence; knowledge statements are rated and weighted for contribution to public protection and appropriateness for entry-level practice. Based upon these ratings, test specifications are developed. Perhaps most importantly to this litigation is Domain 2 of the test specifications

Domain 2 of the test specifications of the MFT Examination is entitled: *Assessing, Hypothesizing, and Diagnosing*. It tests candidates' knowledge with respect to each of those tasks. Domain 2 of the MFT Examination is based upon the most current

15

version of the DSM.  In the event that the DSM changes in between role delineation updates, all questions on the MFT Examination related to the DSM are updated to the new version.

By requiring candidates to pass the MFT Examination as part of the licensure process, the Texas MFT Board ensures all Texas licensure candidates are tested on diagnostic assessment. Furthermore, in being required to pass the MFT Examination as part of the licensure process, all Licensed Marriage and Family Therapists in Texas have objectively demonstrated competency in performing diagnostic assessments and diagnoses in the therapeutic settings in which they practice.

D. **Diagnosis standing alone does not meet the statutory definition of practicing medicine under the Texas Medical Practice Act.**

TEX. OCC. CODE § 151.2(a)(13) reads as follows:

DEFINITIONS.  (a) In this subtitle:

…

(13)  "Practicing medicine" means the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who:

(A) publicly professes to be a physician or surgeon; or

16

(B) directly or indirectly charges money or other compensation for those services.

Tex. Occ. Code § 151.2(a)(13)

Diagnosis standing alone does not meet the statutory definition of practicing medicine. In order to meet the statutory definition of practicing medicine, a diagnosis must be coupled with either a: "treatment, or an offer to treat a mental or physical disease or disorder or a physical deformity or injury [.]" Tex. Occ. Code § 151.2(a)(13). Such a reading is consistent with the practice of medicine. Diagnosis absent a treatment, or an offer to treat, is an empty act. Similarly, treatment, or an offer to treat, cannot be made absent a diagnosis. Diagnosis and treatment are inextricably intertwined in the practice of medicine and should be interpreted as such by this court.

Given that a diagnosis must be coupled with treatment, or an offer to treat, to meet the statutory definition of practicing medicine, it logically follows that the diagnosis must be related to a type of treatment offered by a physician. The therapeutic role Licensed Marriage and Family Therapists perform and the therapeutic settings in which they practice are not the same as

those of physicians. In this instance, to define diagnosis so broadly as to include the therapeutic role and therapeutic settings in which physicians do not practice as practicing medicine is to de facto render the Licensed Marriage and Family Therapist Act null and void. Surely, the Texas legislature never intended such a counterintuitive result.

In addition, the Texas Licensed Marriage and Family Therapist Act defines a Licensed Marriage and Family Therapist as:

DEFINITIONS. In this chapter:

…

(4) "Licensed marriage and family therapist" means a person who offers marriage and family therapy for compensation.

TEX. OCC. CODE § 502.002(4).

The Licensed Marriage and Family Therapy Act only permits the practitioner the to use the title Licensed Marriage and Family Therapist. As the use of additional titles such as "physician" or "surgeon" are not permitted, the public will not mistakenly believe that a Licensed Marriage and Family Therapist is practicing medicine.

18

**E. There is no lawful mechanism by which a Licensed Marriage and Family Therapist may receive a diagnosis from a physician.**

If as the TMA asserts, performing a diagnostic assessment is practicing medicine and as such may only be done by a physician, then from where will the diagnosis for a Licensed Marriage and Family Therapist originate?  Nowhere in the Licensed Marriage and Family Therapist Act or the Medical Practice Act is a physician authorized to provide a diagnosis to a Licensed Marriage and Family Therapist.  Absent such authorization, only two (2) conclusions can follow.  Either, the Texas legislature intended physicians to aid and abet the unlicensed practice of medicine by Licensed Marriage and Family Therapists; or in enacting the Licensed Marriage and Family Therapist Act the Texas legislature created a licensed profession with what amounts to no authority to practice.  Neither conclusion makes any sense.

The only logical conclusion is that in enacting the Licensed Marriage and Family Therapist Act the legislature intended marriage and family therapy to be a stand-alone profession, including conducting the diagnostic assessment upon which

treatment would be based.  Further analysis as set forth in the next two (2) arguments supports this view.

**F. The Texas legislature has specifically set forth in the Medical Practice Act those instances in which a physician must supervise a non-physician practitioner when performing a medical act.**

The Texas legislature has specifically set forth in the Medical Practice Act those instances in which a physician must supervise a non-physician practitioner when performing a medical act.  By not requiring that Licensed Marriage and Family Therapists receive such supervision, the legislature made a determination that marriage and family therapy is a stand-alone profession.  Therefore, a diagnostic assessment by a Licensed Marriage and Family Therapist in the context of the practice of that profession cannot be the practice of medicine.

Chapter 157 of the Medical Practice Act, *Authority of Physician to Delegate Certain Medical Acts*, sets forth the circumstances under which a physician may delegate medical acts to certain licensed persons.  TEX. OCC. CODE § 157.001 et. seq.  If a proper delegation is made, that person is not considered to be practicing medicine without a license in performing the medical

20

act.  Chapter 157 covers, for example, Advanced Practice Registered Nurses, Physician Assistants, and Pharmacists. Licensed Marriage and Family Therapists are not listed in Chapter 157.

The omission of Licensed Marriage and Family Therapists in Chapter 157 was not an accident.  If the legislature determined that marriage and family therapy was the practice of medicine and as such must be delegated by a physician, Licensed Marriage and Family Therapists would have been listed in the chapter as well.  Similarly, if in the context of marriage and family therapy a diagnostic assessment was a medical act and as such the practice of medicine that required a diagnosis be made by a physician, the legislature would have stated such and included Licensed Marriage and Family Therapists as part of Chapter 157.

Similarly, there is no mention in the Texas Licensed Marriage and Family Therapist Act of a Licensed Marriage and Family Therapist requiring a diagnosis.  Had a Licensed Marriage and Family Therapist required a diagnosis or a referral from a physician, the Texas Licensed Marriage and Family Therapist Act

21

would have required such.

**G. The structure of the Occupations Code supports that Marriage and Family Therapy is not the practice of medicine and therefore a diagnostic assessment is not practicing medicine.**

In setting forth the purpose of the Texas Occupations Code, and the revisions thereto, TEX. OCC. CODE § 1.001 states in relevant part:

> Sec. 1.001. PURPOSE OF CODE. (a) This code is enacted as a part of the state's continuing statutory revision program, begun by the Texas Legislative Council in 1963 as directed by the legislature in the law codified as Section 323.007, Government Code. The program contemplates a topic-by-topic revision of the state's general and permanent statute law without substantive change.
>
> (b) Consistent with the objectives of the statutory revision program, the purpose of this code is to make the law encompassed by this code more accessible and understandable by:
>
> (1) rearranging the statutes into a more logical order;
> …

TEX. OCC. CODE § 1.001(b)

Given the above expressed purposes the legislature was seeking to accomplish when revising the Occupations Code, its structure and the placement of sections are instructive of legislative intent.

22

More specifically, Title 3 of the Occupations Code is entitled: *Health Professions*. Within Title 3 there are thirteen (13) Subtitles A through M. Subtitle B concerns physicians. Subtitle C is entitled: *Other Professions Performing Medical Procedures*. Within Subtitle C are: Chiropractors, Podiatrists, Midwives, Physician Assistants, Acupuncturists, and Surgical Assistants.

The Licensed Marriage and Family Therapist Act is set forth in Subtitle I entitled: *Regulation of Psychology and Counseling*. Also listed therein are Psychologists, Licensed Professional Counselors, Chemical Dependency Counselors, and Social Workers. Had the legislator intended that marriage and family therapy be an extension of the medical profession, as a finding that a diagnostic assessment is practicing medicine suggests, the Licensed Marriage and Family Therapist Act would appear either in Subtitle B or Subtitle C of Title 3 of the Occupations Code, not in Subtitle I where it currently appears along with the other recognized mental health counseling professions.

## H. Holding that a diagnostic assessment is practicing medicine violates the intent of the Code Construction Act.

The Code Construction Act, TEX. GOV. CODE § 311.021 states in relevant part:

> Sec. 311.021.  INTENTION IN ENACTMENT OF STATUTES.  In enacting a statute, it is presumed that:
>
> > (1) compliance with the constitutions of this state and the United States is intended;
> > (2) the entire statute is intended to be effective;
> > (3) a just and reasonable result is intended;
> > (4) a result feasible of execution is intended; and
> > (5) public interest is favored over any private interest.

TEX. GOV. CODE § 311.021

Holding that a diagnostic assessment is practicing medicine violates Subsections (2) through (5) of Subchapter C of the Code Construction Act as set forth above.  Specifically, the holding violates Subsections (2) through (4) because:  it renders the statute ineffective in that it severely restricts or eliminates a Licensed Marriage and Family Therapist's ability to practice; is not just and reasonable in that it severely restricts or eliminates a Licensed Marriage and Family Therapist's ability to practice; and it does not result in feasible execution of the statute as intended, i.e., that Licensed Marriage and Family Therapist will be able to

24

practice. Perhaps most importantly, however, such a holding violates TEX. GOV. CODE § 311.021(5) in that it favors a private interest over the public interest.

As the Appellants point out in their motion, a holding that diagnostic assessment is practicing medicine will result in an acute shortage of mental health professionals within the State of Texas. As the TMA points out in its Original and Amended petitions, it is seeking to protect its members' rights to practice and the integrity of their licenses. This places the private interests of the TMA's members before the public's interest in a fully functioning mental health system. A holding that a Licensed Marriage and Family Therapist cannot perform a diagnostic assessment as set forth in 22 TEX. ADMIN. CODE § 801.42(13) will deny the people of the State of Texas certain mental health services to which the legislature decided they were entitled when it enacted the Texas Licensed Marriage and Family Therapist Act.

## I. Dr. Priscilla Ray the Texas Medical Association's expert should have been disqualified.

In both its Original Petition and Second Amended Original Petition, the TMA relies on the affidavit of Priscilla Ray, MD as its

25

expert. A search of Dr. Ray's physician profile as maintained by the Texas Medical Board, and accessed through the board's website, reveals that Dr. Ray has been the subject of two (2) separate and distinct administrative proceedings, both of which involved ethics lapses, and both of which resulted in action by the Texas Medical Board.

In October 2008, the Texas Medical Board imposed a two thousand dollar ($2,000) administrative penalty on Dr. Ray. This penalty was the result of Dr. Ray ignoring two (2) separate audit letters issued by the Texas Medical Board requesting information about her continuing medical education. Attached hereto and incorporated herein as Appendix B is a copy of the Texas Medical Board's *Order Imposing Administrative Action* on Dr. Ray dated October 8, 2008.

In February 2013, Dr. Ray entered into a *Remedial Plan* with the Texas Medical Board requiring that she take continuing medical education credits in the topic of ethics. The *Remedial Plan* was the result of Dr. Ray continuing to write prescriptions following the expiration of her Texas Controlled Substance

26

Registration on August 31, 2010 and its renewal on September 20, 2010. Attached hereto and incorporated herein as Appendix C is a copy of the Texas Medical Board's Order *Remedial Plan* for Dr. Ray dated February 8, 2013.

Given the above ethical lapses on the part of Dr. Ray, both of which resulted in administrative action by the Texas State Medical Board, Dr. Ray should be disqualified as an expert in this matter. To the extent that either the District Court or the three (3) judge panel of this Court relied upon her affidavit, such reliance in and of itself should be the basis of a reversible error. At a minimum, it calls for reconsideration of this matter by this Court.

CONCLUSION

For the reasons both set forth in the Appellants' motion and this amicus brief, the AMFTRB respectfully submits that Appellants' motion for en banc reconsideration of the panel's decision should be granted by the Court and the panel's decision upholding of the District Court's finding that 22 TEX. ADMIN CODE §801.41(13) as invalid and void should be reversed. Not to do so

27

frustrates the legislative intent behind the Texas Licensed Marriage and Family Therapist Act.  Perhaps more importantly, however, is that it deprives the people of the State of Texas access to the mental health services that Licensed Marriage and Family Therapists provide.

Dated:  February 25, 2015

Respectfully submitted,

By:   /s/ Steven T. Peluso
        STEVEN T. PELUSO, ESQ.

THE LAW OFFICE OF
  STEVEN T. PELUSO, ESQ.
The St. James Building
1133 Broadway, Suite 304
New York, New York 10010
Tel.:  646.448.4319
steven.peluso@spelusolawoffice.com


ATTORNEY FOR AMICUS THE ASSOCIATION OF MARITAL
AND FAMILY THERAPY REGULATORY BOARDS

28

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 11(c) of the Texas Rules of Appellate Procedure, the Association of Marital and Family Therapy Regulatory Boards has paid all fees and costs in connection with preparing this Amicus Curie Brief.

/s/ Steven T. Peluso
STEVEN T. PELUSO

## CERTIFICATE OF COMPLIANCE

In compliance with 9.4(e) of the Texas Rules of Appellate Procedure, this Amicus Curie Brief has been prepared using a size 14 Century Schoolbook Font.  In compliance with 9.4(i)(2) of the Texas Rules of Appellate Procedure this Amicus Curie Brief contains 4,899 words, excluding those portions exempted under Rule 9.4(i)(1).

/s/ Steven T. Peluso
STEVEN T. PELUSO

## CERTIFICATE OF SERVICE

I Steven T. Peluso hereby certify that I have served a copy of this amicus brief of the Association of Marital and Family Therapy Regulatory Boards on all Counsel of record by United States Postal Service Express Mail Service on February 25, 2015 as listed below:

BAKER BOTTS L.L.P.

MATT C. WOOD

98 San Jacinto Blvd.,
  Suite 1500
Austin, Texas 78701-4039

COUNSEL FOR
APPELLANT/CROSS-APPELLEE
TEXAS ASSOC. FOR MARRIAGE
AND FAMILY THERAPY

OFFICE OF THE ATTORNEY
GENERAL

DUSTIN M. HOWELL
Assistant Attorney
  General, Solicitor
  General Division

P.O. Box 12548 (MC-059) Austin, Texas 78711-2548

COUNSEL FOR
APPELLANTS/CROSS-APPELLEES TEXAS STATE
BOARD OF EXAMINERS OF
MARRIAGE AND FAMILY
THERAPISTS, CHARLES
HORTON, AND SANDRA
DESOBE

LAW OFFICES OF DAVID F.
BRAGG, P.C.
DAVID F. BRAGG

P. O. Box 2047
Bastrop, Texas 78602-2047

COUNSEL FOR
APPELLEE/CROSS-APPELLANT
TEXAS MEDICAL
ASSOCIATION

/s/ Steven T. Peluso
STEVEN T. PELUSO

# APPENDIX A

| State of Colorado | § | |
|---|---|---|
| | § | AFFIDAVIT |
| County of El Paso | § | |

BEFORE ME the undersigned Notary on this day appeared Lois Paff Bergen, Ph.D., known personally to me to be the individual whose name is subscribed below and who after being duly cautioned and sworn did state to me under oath the following:

1) My name is Lois Paff Bergen, Ph.D.

2) I am the current Executive Director of the Association of Marital and Family Therapy Regulatory Boards (the "AMFTRB"), and have served in such capacity since 2001.

3) I have read the Amicus Brief to be submitted by AMFTRB in the matter of *THE TEXAS STATE BOARD OF EXAMINERS OF MARRIAGE AND FAMILY THERAPISTS, ET, AL., v. TEXAS MEDICAL ASSOCIATION* (No. 03-13-00077-CV). To the best of my knowledge and belief the facts set forth therein are true.

4) The AMFTRB is a nonprofit organization whose members are statutorily constituted regulatory boards, including administrative agencies, legally responsible for the regulation of Marital and Family Therapists. It is organized to: facilitate communication among its member boards concerning the regulation of Marital and Family Therapists; to sponsor collaboration among the member boards in developing compatible standards and Family Therapy services to other Marital and Family Therapy organizations, to legislative, judicial, regulatory, and executive governmental bodies, and to other groups or associations whose areas of interest may coincide with those of its membership; to aid its member boards in fulfilling statutory, professional, public, and ethical obligations; and to engage in and encourage research on matters related to the legal regulation of Marital and Family Therapists.

5) AMFTRB's membership includes the regulatory agencies of all fifty (50) states, the District of Columbia, and the Territory of Guam. The Texas State Board of Examiners of Marriage and Family Therapists (the "Texas MFT Board") is a member in good standing of the AMFTRB

6) The AMFTRB develops, sponsors, and administers the National Marital and Family Therapy Examination (the "MFT Examination"). Currently, fifty-one (51) AMFTRB member jurisdictions use the MFT Examination as part of the licensure process for Marital and Family Therapists. The Texas MFT Board utilizes the MFT Examination to test candidates for licensure as Marriage and Family Therapists in the State of Texas.

7) Under the AMFTRB's Test Policy, only individuals who have successfully completed a master or doctorate degree in marital and family therapy (or its equivalent as established by the jurisdiction) from a university program that has been accredited by a nationally or regionally recognized accreditation body, and who have undertaken and/or completed post degree supervised practical experience as outlined by the jurisdiction in which the candidate is seeking licensure, may be approved by the jurisdiction to sit for the MFT Examination. To the best of my knowledge, in order for a program to be accredited by a nationally or regionally recognized accreditation body its curriculum includes assessment and diagnosis of patients in the marital and family therapy practice setting.

8) For example, the Commission on Accreditation for Marriage and Family Therapy (COAFMTE) accredits master's degree, doctoral degree, and post-graduate degree clinical training programs in marriage and family therapy throughout the United States and Canada. COAFMTE is the accrediting arm of the American Association for Marriage and Family Therapy (AAMFT) and is recognized by the Council for Higher Education Accreditation. In order to meet COAFMTE's Accreditation Standards, a program's curriculum must include coursework in systemic/relational assessment and mental health diagnosis.

9) As the Texas MFT Board utilizes the MFT Examination, and therefore must bide by the AMFTRB's Test Policy, to the best of my knowledge all Texas candidates for licensure as a Marriage and Family Therapist must graduate from an accredited institution. As such, they would have had to demonstrate mastery of assessment and diagnosis of patients in a marital and family therapy practice setting during their education. Therefore, to the best of my knowledge before they can even sit for the MFT Examination, every candidate for licensure as a Marriage and Family Therapist in the state of Texas will have received training in and demonstrated mastery of, in the educational setting, diagnostic assessment and diagnosis in the therapeutic settings in which they will practice.

10) The MFT Examination is an objective competency based national licensure examination that tests candidates on six (6) practice domains. The MFT Examination is based upon a role delineation study. The purpose of the role delineation study is to develop practice-relevant test specifications for the examination. The role delineation is updated every five (5) to seven (7) years to ensure it remains current. The last such update was in 2013.

11) The process works as follows: First, an Examination Advisory Committee (the "EAC") is convened to define the performance domains, tasks, and knowledge required for entry-level practice in marital and family therapy. Members of the EAC are appointed by the AMFTRB and include representatives from various practice settings. The draft of role delineation is then constructed. Next, the draft role delineation undergoes a validation study by a representative sample of licensed Marital and Family Therapists nationwide. Once validated, the task statements are rated for frequency of performance and relation to clinical competence; knowledge statements are rated and weighted for contribution to public protection and appropriateness for entry-level practice. Based upon these ratings, test specifications are developed. Perhaps most importantly to this litigation is Domain 2 of the test specifications

12) Domain 2 of the test specifications of the MFT Examination is entitled: *Assessing, Hypothesizing, and Diagnosing*. It tests candidates' knowledge with respect to each of those tasks. Domain 2 of the MFT Examination is based upon the most current version of the DSM. In the event that the DSM changes in between role delineation updates, all questions on the MFT Examination related to the DSM are updated to the new version.

**[Text continues on Page 4.]**

Page 3 of 4

34

13) All fees and expenses for the Amicus Brief have been paid by the AMFTRB.

_Lois Paff Bergen, PhD_ _LMFT_
Dr. Lois Paff Bergen

_2-12-15_
Date

Subscribed and sworn to before me in the county of El Paso, State of Colorado, this ___12___ day of ___February___, 2015.

_Chanice Busch_
(Notary's official signature)

CHANICE BUSCH
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20124028705
My Commission Expires August 28, 2016

Seal

_August 28, 2016_
(Commission Expiration)

Page 4 of 4

35

# APPENDIX B



TEXAS MEDICAL BOARD

# ORDER IMPOSING
# ADMINISTRATIVE PENALTY

| Priscilla Ray, MD | RE: Log No. 08-5416 |
|---|---|
| 6624 Fannin | License #: E2808 |
| Suite #2120 | |
| Houston, TX 77030 | |

The Texas Medical Board (TMB) has determined that Priscilla Ray, MD ("the Respondent") is in violation of §164.051(a)(3), specifically failure to respond to the Board's CME audit letters (dated 4/25/08 and 6/2/08) regarding audit for dates 3/1/06 through 2/28/08. TMB hereby imposes an administrative penalty for this violation, as authorized by Section 165.001, Texas Occupations Code and Board Rule 187.75-82.

The amount of the imposed penalty is $2000.00. Payment of this penalty is due no later than 60 days after the Respondent receives notice of this Order. The administrative penalty shall be paid in a single payment by cashier's check or money order payable to the Texas Medical Board and shall be submitted to the Director of Enforcement for the Board for routing so as to be remitted to the Comptroller of Texas for deposit in the general revenue fund. Respondent's failure to pay the administrative penalty as ordered shall constitute grounds for further disciplinary action by the Board, and may result in a referral by the Executive Director of the Board for collection by the Office of the Attorney General.

The Respondent may appeal the imposition of this penalty as provided by Section 165.005, Texas Occupations Code, not later than 30 days after the date this Order imposing the administrative penalty is final.

THIS IS A PUBLIC RECORD.

SIGNED AND ENTERED by the presiding officer of the Texas Medical Board on this _10th_ day of ___October___, 200_8_.

Roberta M. Kalafut, D.O., President
Texas Medical Board

37

# APPENDIX C



TEXAS MEDICAL BOARD

**REMEDIAL PLAN**
**PRISCILLA RAY, MD, E-2808**

On the ___8___ day of _February_, 2013, this matter came on to be heard before the Texas Medical Board ("Board"). This Remedial Plan was offered by the Quality Assurance Panel (QAP), and was prepared by Patrick Brian Coats.

FINDINGS

Respondent's Texas Controlled Substance Registration (Registration) expired on August 31, 2010. Respondent wrote prescriptions following the expiration of her Registration and prior to the renewal of her Registration on September 20, 2010.

Respondent does not admit or deny the Findings and Conclusions of Law contained herein but, rather, has agreed to settle in good faith to avoid the cost, expense, and uncertainty of litigation.

BOARD HISTORY

Respondent has not had a prior Order or Remedial Plan with the Board.

MITIGATING FACTOR

Respondent cooperated in the investigation of the allegations that resulted in this Remedial Plan.

CONCLUSIONS OF LAW

1. The Board has jurisdiction over the subject matter and Respondent pursuant to Medical Practice Act, Title 3, Subtitle B, Texas Occupations Code ("Act").

2. Section 164.053(a)(1) of the Act authorizes the Board to take action against Respondent.

3. Section 164.0015 of the Act authorizes the Board to resolve this matter with a Remedial Plan.

Page 1 of 5

39

4.    Section 164.002(d) of the Act provides that this Remedial Plan is a settlement agreement under the Texas Rules of Evidence for purposes of civil litigation.

## REMEDIAL PLAN TERMS

Based on the above, Respondent shall:

1.    Within one year following the date of the entry of this Remedial Plan, Respondent shall enroll in and successfully complete at least four hours of continuing medical education ("CME") in the topic of ethics. The CME shall be approved for Category I credits by the American Medical Association and approved in writing in advance by the Executive Director or their designee. To obtain approval for the course, Respondent shall submit in writing to the Compliance Division of the Board information on the course, to include at least a reasonably detailed description of the course content and faculty, as well as the course location and dates of instruction. Respondent shall submit documentation of attendance and successful completion of this requirement to the Compliance Division of the Board on or before the expiration of the time limit set forth for completion of the course. The CME requirements set forth in this paragraph shall be in addition to all other CME required for licensure maintenance.

2.    The cost for administering the Remedial Plan is $500 per year. Payment of this cost is due no later than 60 days after Respondent receives notice of Board approval of this Remedial Plan. The cost shall be paid in a single payment by cashier's check or money order payable to the Texas Medical Board and shall be submitted to the Executive Director for the Board for routing so as to be remitted to the Comptroller of Texas for deposit in the general revenue fund.

3.    The terms of this Remedial Plan are not subject to modification or termination.

4.    Respondent shall comply with all the provisions of the Act and other statutes regulating Respondent's practice.

5.    Respondent shall fully cooperate with the Board attorneys, investigators, compliance officers, consultants, and other employees or agents of the Board in any way involved in investigation, review, or monitoring associated with Respondent's compliance with this Remedial Plan.

6. Any violation of the terms, conditions, or requirements of this Remedial Plan by Respondent shall constitute unprofessional conduct likely to deceive or defraud the public, or to injure the public, and shall constitute a basis for disciplinary action by the Board against Respondent pursuant to the Act.

7. This Remedial Plan shall automatically terminate upon Respondent's submission to the Board of evidence deemed to be sufficient by the Compliance Division of the Board that Respondent successfully completed the requirements set forth in the Remedial Plan Terms Paragraph Numbers 1 and 2.

**THIS REMEDIAL PLAN IS A PUBLIC RECORD.**
**THIS REMEDIAL PLAN IS NON-DISCIPLINARY.**

[SIGNATURE PAGE(S) FOLLOW]

I, PRISCILLA RAY, M.D., HAVE READ AND UNDERSTAND THE FOREGOING REMEDIAL PLAN. I UNDERSTAND THAT BY SIGNING, I WAIVE CERTAIN RIGHTS. I SIGN IT VOLUNTARILY. I UNDERSTAND THIS REMEDIAL PLAN IS A FINAL, NON-APPEALABLE AGREEMENT THAT CONTAINS THE ENTIRE AGREEMENT AND THERE IS NO OTHER AGREEMENT OF ANY KIND, VERBAL, WRITTEN OR OTHERWISE.

_____
PRISCILLA RAY, M.D.
Respondent

_____01/04/13_____
DATE

SIGNED AND ENTERED by the presiding officer of the Texas Medical Board on this
8 day of _February_, 2013.

_____
Irvin E. Zeitler, Jr., D.O., President
Texas Medical Board